✎AO 245B(05-MA)      (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| UNITED STATES OF AMERICA<br>V. | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **JOHN M. PANICO** | Case Number: **1: 03 CR 10258 - 001 - DPW** |

USM Number: 24871-038

Robert F. Benson, Jr., Esq.

Defendant's Attorney

☑ Additional documents attached

Transcript of Original Sentencing Hearing 8/5/04

☐

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____ 
which was accepted by the court.

☑ was found guilty on count(s)    1 and 2 on 4/7/04 _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:                    Additional Counts - See continuation page ☐

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 894 | Conspiracy to collect an extension of credit by extortionate means | 11/30/00 | 1 |
| 18 USC § 894(a) | Collection of an extension of credit by extortionate means | 11/30/00 | 2 |
| 18 USC § 2 | Aiding and Abetting | 11/30/02 | 2 |

The defendant is sentenced as provided in pages 2 through ___10___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has been found not guilty on count(s)      3 _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

03/23/06

Date of Imposition of Judgment

*[signature]*

Signature of Judge

The Honorable Douglas P. Woodlock

Judge, U.S. District Court

Name and Title of Judge

March 23, 2006

Date

AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
                   Sheet 2 - D. Massachusetts - 10/05

DEFENDANT:     **JOHN M. PANICO**
CASE NUMBER: **1: 03 CR 10258   - 001 - DPW**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:          36        month(s)

The defendant shall serve 36 months on each of Counts 1 and 2, to be served concurrently.
The defendant shall receive credit for Time Served from 8/7/03 to 8/20/03 and from 4/7/04 to date.

☑ The court makes the following recommendations to the Bureau of Prisons:

The defendant should be designated to a facility as close as possible to his family in  Boston, Massachusetts.
The defendant should participate in Anger Management, if available at the designated facility.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m.   ☐ p.m.   on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

Judgment—Page ___3___ of ___10___

DEFENDANT:    **JOHN M. PANICO**
CASE NUMBER: **1: 03 CR 10258   - 001 - DPW**

## SUPERVISED RELEASE

[ ] See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    36    month(s)

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.

[ ] The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

[✓] The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[✓] The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

[ ] The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

[ ] The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B(05-MA)  (Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

Judgment—Page ___4___ of ___10___

DEFENDANT:  **JOHN M. PANICO**
CASE NUMBER:  **1: 03  CR  10258  - 001  - DPW**

## ADDITIONAL☐ SUPERVISED RELEASE☐PROBATION TERMS

## Continuation of Conditions of ☑ Supervised Release ☐ Probation

THE DEFENDANT SHALL NOT USE ANY UNLAWFUL CONTROLLED SUBSTANCE.
THE DEFENDANT SHALL  PARTICIPATE IN A PROGRAM FOR SUBSTANCE ABUSE, WHICH
PROGRAM MAY INCLUDE DRUG TESTING, AS DIRECTED BY THE U.S. PROBATION OFFICER.
THE DEFENDANT SHALL CONTRIBUTE TO THE COSTS OF SUCH SERVICES BASED ON THE
ABILITY TO PAY OR THE AVAILABILITY OF THIRD PARTY PAYMENT.

DEFENDANT SHALL PAY THE SPECIAL ASSESSMENT OF $200.00, IMMEDIATELY OR
ACCORDING TO A PAYMENT PLAN ESTABLISHED BY THE COURT IN CONSULTATION WITH
THE PROBATION OFFICER.

SO LONG AS HIS FINANCIAL OBLIGATIONS UNDER THIS JUDGMENT ARE OUTSTANDING,
DEFENDANT IS PROHIBITED  FROM INCURRING NEW CREDIT CHARGES OR OPENING
ADDITIONAL LINES OF CREDIT WITHOUT THE APPROVAL OF THE PROBATION OFFICER

DEFENDANT IS TO PROVIDE THE PROBATION OFFICER ACCESS TO ANY REQUESTED
FINANCIAL INFORMATION.  FINANCIAL INFORMATION PROVIDED TO THE PROBATION
OFFICE BY THE DEFENDANT MAY BE SHARED WITH THE FINANCIAL LITIGATION UNIT  OF
THE US ATTORNEY'S OFFICE

THE DEFENDANT SHALL  PARTICIPATE IN A PROGRAM FOR ANGER MANAGEMENT, AS
DIRECTED BY THE U.S. PROBATION OFFICER. THE DEFENDANT SHALL CONTRIBUTE TO THE
COSTS OF SUCH SERVICES BASED ON THE ABILITY TO PAY OR THE AVAILABILITY OF THIRD
PARTY PAYMENT.

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
                  Sheet 5 - D. Massachusetts - 10/05

Judgment — Page  5  of  10

DEFENDANT: **JOHN M. PANICO**
CASE NUMBER: **1: 03 CR 10258  - 001  - DPW**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  $200.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

☐ See Continuation Page

| **TOTALS** | $  $0.00 | $  $0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 - D. Massachusetts - 10/05

Judgment — Page    6   of    10

DEFENDANT:   **JOHN M. PANICO**
CASE NUMBER: **1: 03 CR 10258   - 001 - DPW**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   Lump sum payment of $ _____ due immediately, balance due

      ☐  not later than _____ , or
      ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☒   Special instructions regarding the payment of criminal monetary penalties:

      SPECIAL ASSESSMENT OF $200 SHALL BE PAID IMMEDIATELY OR ACCORDING TO A PAYMENT PLAN ESTABLISHED BY THE COURT IN CONSULTATION WITH THE PROBATION OFFICER.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation Page

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B   (Rev. 06/05) Criminal Judgment
Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:   **JOHN M. PANICO**                                                 Judgment — Page   7   of   10
CASE NUMBER:  **1: 03 CR 10258   - 001  - DPW**
DISTRICT:         **MASSACHUSETTS**

## STATEMENT OF REASONS

**I**   **COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A ☐   **The court adopts the presentence investigation report without change.**

B ☑   **The court adopts the presentence investigation report with the following changes.**
(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
(Use Section VIII if necessary.)

1   ☐   **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or specific offense characteristics):

2   ☐   **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

3   ☐   **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

4   ☑   **Additional Comments or Findings** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions):

SEE SECTION VIII

C ☐   **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II**   **COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A ☑   No count of conviction carries a mandatory minimum sentence.

B ☐   Mandatory minimum sentence imposed.

C ☐   One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum does not apply based on

☐   findings of fact in this case
☐   substantial assistance (18 U.S.C. § 3553(e))
☐   the statutory safety valve (18 U.S.C. § 3553(f))

**III**   **COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:         24
Criminal History Category:   III
Imprisonment Range:          63      to   78       months
Supervised Release Range:    2            to   3        years
Fine Range: $ 10,000         to  $   100,000
☑   Fine waived or below the guideline range because of inability to pay.

AO 245B (05-MA)  (Rev. 06/05) Criminal Judgment
Attachment (Page 2) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:      **JOHN M. PANICO**
CASE NUMBER: **1: 03 CR 10258 - 001 - DPW**
DISTRICT:            **MASSACHUSETTS**

## STATEMENT OF REASONS

**IV   ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A ☐   The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B ☐   The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons. (Use Section VIII if necessary.)

C ☐   The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual. (Also complete Section V.)

D ☑   The court imposed a sentence outside the advisory sentencing guideline system. (Also complete Section VI.)

**V   DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A   **The sentence imposed departs** (Check only one.):
☐   below the advisory guideline range
☐   above the advisory guideline range

B   **Departure based on** (Check all that apply.):

1   **Plea Agreement** (Check all that apply and check reason(s) below.):
☐   5K1.1 plea agreement based on the defendant's substantial assistance
☐   5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
☐   binding plea agreement for departure accepted by the court
☐   plea agreement for departure, which the court finds to be reasonable
☐   plea agreement that states that the government will not oppose a defense departure motion.

2   **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐   5K1.1 government motion based on the defendant's substantial assistance
☐   5K3.1 government motion based on Early Disposition or "Fast-track" program
☐   government motion for departure
☐   defense motion for departure to which the government did not object
☐   defense motion for departure to which the government objected

3   **Other**
☐   Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C   **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ 4A1.3 | Criminal History Inadequacy | ☐ 5K2.1 | Death | ☐ 5K2.11 | Lesser Harm |
| ☐ 5H1.1 | Age | ☐ 5K2.2 | Physical Injury | ☐ 5K2.12 | Coercion and Duress |
| ☐ 5H1.2 | Education and Vocational Skills | ☐ 5K2.3 | Extreme Psychological Injury | ☐ 5K2.13 | Diminished Capacity |
| ☐ 5H1.3 | Mental and Emotional Condition | ☐ 5K2.4 | Abduction or Unlawful Restraint | ☐ 5K2.14 | Public Welfare |
| ☐ 5H1.4 | Physical Condition | ☐ 5K2.5 | Property Damage or Loss | ☐ 5K2.16 | Voluntary Disclosure of Offense |
| ☐ 5H1.5 | Employment Record | ☐ 5K2.6 | Weapon or Dangerous Weapon | ☐ 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ 5H1.6 | Family Ties and Responsibilities | ☐ 5K2.7 | Disruption of Government Function | ☐ 5K2.18 | Violent Street Gang |
| ☐ 5H1.11 | Military Record, Charitable Service, Good Works | ☐ 5K2.8 | Extreme Conduct | ☐ 5K2.20 | Aberrant Behavior |
| | | ☐ 5K2.9 | Criminal Purpose | ☐ 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ 5K2.0 | Aggravating or Mitigating Circumstances | ☐ 5K2.10 | Victim's Conduct | ☐ 5K2.22 | Age or Health of Sex Offenders |
| | | | | ☐ 5K2.23 | Discharged Terms of Imprisonment |
| | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

D   **Explain the facts justifying the departure.** (Use Section VIII if necessary.)

AO 245B (05-MA)   (Rev. 06/05) Criminal Judgment
Attachment (Page 3) — Statement of Reasons - D. Massachusetts 10/05

DEFENDANT:   **JOHN M. PANICO**                                      Judgment — Page  9  of    10
CASE NUMBER: **1: 03 CR 10258  - 001 - DPW**
DISTRICT:         **MASSACHUSETTS**

## STATEMENT OF REASONS

**VI    COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A    **The sentence imposed is** (Check only one.):
  ☑ below the advisory guideline range
  ☐ above the advisory guideline range

B    **Sentence imposed pursuant to** (Check all that apply.):

  1    **Plea Agreement** (Check all that apply and check reason(s) below.):
     ☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
     ☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
     ☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline
        system

  2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
     ☐ government motion for a sentence outside of the advisory guideline system
     ☑ defense motion for a sentence outside of the advisory guideline system to which the government did not object
     ☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

  3    **Other**
     ☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C    **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

  ☑ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
  ☑ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
  ☑ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
  ☑ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
  ☑ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
     (18 U.S.C. § 3553(a)(2)(D))
  ☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
  ☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D    **Explain the facts justifying a sentence outside the advisory guideline system.** (Use Section VIII if necessary.)

   THIS CASE WAS REMANDED FOR RESENTENCING POST-BOOKER IN LIGHT OF OBSERVATIONS MADE BY
   THIS COURT DURING THE PRE-BOOKER SENTENCING HEARING THAT A LOWER SENTENCE WOULD BE
   GIVEN "IF THE GUIDELINES WERE LOOSENED OR ABOLISHED", UNITED STATES V. PANICO, 435 F.3d 47,
   50 (1st Cir. 2006).  AT THE INITIAL SENTENCING, AS REFLECTED IN THE ATTACHED TRANSCRIPT AT
   PAGES 41-50, AFTER CONSIDERATION OF 18 U.S.C. § 3553, I INDICATED THAT "IF BLAKELY IS READ TO
   UNDERMINE THE GUIDELINES [AS IT LATER WAS IN BOOKER]" THAT A SENTENCE OF "36 MONTHS IS
   APPROPRIATE." Id. AT 44.  IN ITS APPELLATE BRIEFING POST-BOOKER, THE GOVERNMENT REQUESTED
   THE COURT OF APPEALS "TO REMAND WITH INSTRUCTIONS TO THE DISTRICT COURT TO IMPOSE THE
   36-MONTH SENTENCE THE DISTRICT COURT PREVIOUSLY FOUND APPROPRIATE."

AO 245B ( 05-MA) (Rev. 06/05) Criminal Judgment
    Attachment (Page 4) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT: **JOHN M. PANICO**
CASE NUMBER: **1: 03 CR 10258  - 001 - DPW**
DISTRICT: **MASSACHUSETTS**

Judgment — Page 10 of 10

## STATEMENT OF REASONS

### VII  COURT DETERMINATIONS OF RESTITUTION

A  ☑  Restitution Not Applicable.

B  Total Amount of Restitution: _____

C  Restitution not ordered (Check only one.):

    1  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

    2  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

    3  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

    4  ☐  Restitution is not ordered for other reasons. (Explain.)

D  ☐  Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

### VIII  ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Court finds the evidence does not show by a fair preponderance that Defendant's role in the offense was that of an organizer, leader, manager or supervisor under U.S.S.G. §3B1.1; no 2 point increase in the offense level was warranted.

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 00/00/1970

Defendant's Residence Address: EAST BOSTON, MA

Defendant's Mailing Address:
    EAST BOSTON, MA

Date of Imposition of Judgment
03/23/06

Signature of Judge
The Honorable Douglas P. Woodlock  Judge, U.S. District Court

Name and Title of Judge
Date Signed  *March 23, 2006*

```
1                    UNITED STATES DISTRICT COURT
2                    DISTRICT OF MASSACHUSETTS
3    * * * * * * * * * * * * * * * * *
                                      *
4    UNITED STATES                    *
                    Plaintiff         *
5                                     *
        VERSUS                        *    CR-03-10258-DPW
6                                     *
     JOHN PANICO                      *
7                    Defendant        *
                                      *
8    * * * * * * * * * * * * * * * * *
9            BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10             UNITED STATES DISTRICT COURT JUDGE
11                      SENTENCING HEARING
12                       AUGUST 5, 2004
13   APPEARANCES:
14        COLIN W. OWYANG, ESQ. AND ERNEST DINISCO, ESQ.,
          Assistant United States Attorneys, United States
15        Attorney's Office, 1 Courthouse Way, Suite 9200,
          Boston, Massachusetts  02210, on behalf of the
16        United States
17        EDWARD F. PASQUINA, ESQ, 75 Middle Street,
          Gloucester, Massachusetts  01930, on behalf
18        of the Defendant
19
                              Courtroom No.  1 - 3rd Floor
20                            1 Courthouse Way
                              Boston, Massachusetts 02210
21                            3:00 P.M. - 4:25 P.M.
22
          Pamela R. Owens - Official Court Reporter
23        John Joseph Moakley District Courthouse
              1 Courthouse Way - Suite 3200
24             Boston, Massachusetts  02210
25        Method of Reporting:  Computer-Aided Transcription
```

Page 6

1   Guideline-free world using the Guidelines strictly as
2   Guidelines; and a sentence within the statutory minimum
3   mandatory and maximum; and then the third sentence,
4   we're supposed to request an alternative sentence if the
5   Court finds that Blakely applies in some form to the
6   Guidelines and applies the Guidelines, but as modified
7   by however the Court interprets Blakely modifying the
8   Guidelines. For example, if the Court were to interpret
9   Blakely's affect on Federal Guidelines in the same way
10  as the decision applies on its face to the Washington
11  State guidelines, what would that sentence be?
12  Commonly, I think people are assuming that if Blakely
13  were to apply to the Guidelines by the enhancements that
14  weren't proven beyond a reasonable doubt and were not
15  admitted to by the defendant, we're not doing a Blakely
16  sentence here. So that would be the third -- as it's
17  obviously been played out in this case, obviously, the
18  first request we would make is he be sentenced within
19  the Guideline calculation as set forth in the PSR;
20  second, for a sentence within the statutory -- basically
21  under the statutory maximum in this case using the
22  Guidelines only as a guideline and not as a strict legal
23  principle; and then, third, a sentence that essentially
24  if the Court were to find that Blakely affects this case
25  such that it cannot sentence this defendant under the

Page 7

1   enhancements for the firearm and the role adjustment
2   because those factors were not either admitted by the
3   defendant or proven beyond a reasonable doubt to the
4   jury, then the Government would ask that the Court say
5   what the sentence would be under that eventuality. Does
6   that make sense?
7           THE COURT: Well, I guess we'll just have to
8   go through it step by step. I'm not sure yet what it is
9   that the Government is asking for here.
10          So let's turn to the defendant's objections,
11  at least as I understand them.
12          The first is the recommendation for a
13  four-level enhancement for the use of a dangerous weapon
14  as a specific offense characteristic. Now, the jury, by
15  its determinations here, effectively found that this was
16  not the case beyond a reasonable doubt. Do we share
17  that view?
18          MR. OWYANG: Well, they could have under
19  924(c). And of course, the elements in 924(c) are
20  slightly different than, I think, the requirements for
21  the firearm enhancement.
22          THE COURT: What really was different there?
23          MR. OWYANG: In connection with "or in
24  furtherance of a crime of violence." But in general --
25          THE COURT: But it's a brandishing. The

Page 8

1   Government's theory is brandishing and --
2           MR. OWYANG: Yes. That's correct.
3           THE COURT: -- brandishing is incorporated in
4   the statute itself.
5           MR. OWYANG: I don't mean to quibble. I agree
6   in principle with what Your Honor just said.
7           THE COURT: Okay. So, what the Government is
8   asking me to do is to find by a fair preponderance that
9   a firearm was brandished in connection with this
10  offense?
11          MR. OWYANG: Yes, Your Honor.
12          THE COURT: Okay. Well, Mr. Pasquina, I would
13  find that.
14          MR. PASQUINA: Beg your pardon?
15          THE COURT: I would find that. I listened to
16  the evidence in this case, including the evidence that
17  involved the inquiry that Mr. Auciello made to Mr.
18  Panico in which he asked him whether or not it was
19  loaded. He said it wasn't loaded. He didn't say it
20  wasn't a firearm. He just said it wasn't loaded.
21          MR. PASQUINA: Your Honor, I think there was
22  a lot of testimony or certainly there was a lot of
23  testimony to -- they're trying to give four points for
24  enhancement for that.
25          THE COURT: Well, but tell me why I shouldn't

Page 9

1   credit that testimony.
2           MR. PASQUINA: Your Honor, because it is -- it
3   is you who, under certain conditions, may consider that
4   conduct, or you may dismiss that conduct. And I just
5   say taking the totality of the statements that were said
6   in this courtroom, Andrews himself who testified that
7   there was a gun, he himself on the stand on that -- on
8   one of those days when he was testifying denied under
9   oath that he had tried to coerce Mr. Auciello into a
10  cocaine deal.
11          THE COURT: That's all irrelevant. I'm
12  focused on the question of whether or not for purposes
13  of the Guidelines I have a -- there was a gun
14  brandished. That's the issue. And we have, you know,
15  the tape from April 12th, 2000. Andrews says, "Here's
16  the thing. He pulled a gun on my head. You understand
17  that. I want to meet with you. I want to talk to you."
18  And he says, "I won't be." Then the discussion is on
19  May 16th. Andrews says that -- talks about the gun on
20  -- gun to his head and ends up by saying that "that was
21  no fake gun, brother." Then we have Andrews reporting
22  the temple still hurting on April 3rd. Auciello on
23  April 9th saying that he told Mr. Panico that it was
24  wrong to have done that. And the testimony which I
25  earlier referenced in which Auciello testified -- and

Page 14

1  indicated that those attempts to collect the bet,
2  telephone conversations and the meetings were arranged
3  by Mr. Auciello while Mr. Auciello was acting at the
4  direction of Mr. Panico. He was collecting the money
5  which was owed to Mr. Panico; he was making the
6  arrangements which Mr. Panico had requested him to make;
7  and he was acting as Mr. Panico's ambassador or enforcer
8  in these interactions because Mr. Panico made it himself
9  clear on the conversations that he did not want himself
10 to personally deal with Mr. Andrews. That testimony is
11 also --
12        THE COURT: Is that really the Government's
13 theory of this case, that was Mr. Panico's money?
14        MR. OWYANG: Yes, Your Honor.
15        THE COURT: That that was where it came from
16 and not from some other extortionate credit organization?
17        MR. OWYANG: Well, there is another
18 organization involved to the extent that a bet was lost
19 and that Mr. Panico was, in turn, either laying off or
20 placing bets through another organization.
21        THE COURT: And that gets me to the question
22 of whether or not he can fairly be called an organizer
23 or manager or supervisor.
24        MR. OWYANG: Well, it's the Government's view
25 that he supervised Mr. Auciello. He does not need to be

Page 16

1        THE COURT: Now I'm looking at the background
2  note in respect of 3B1.1. And it provides the
3  suggestion that the adjustment is included primarily
4  because of concerns about relative responsibility.
5  However, it is also likely that persons who exercise a
6  supervisory or managerial role in the commission of an
7  offense tend to profit more from it and present a
8  greater danger to the public and are more likely to
9  recidivate.
10        Now, as I understand your theory, it is that
11 because Mr. Auciello was somehow laying this bet off on
12 -- or this money off on Mr. Panico, that Mr. Panico is
13 the supervisor of Mr. Auciello as opposed to simply
14 another link in a larger chain.
15        MR. OWYANG: I don't think he was -- and these
16 may be terms of art. I don't think Mr. Auciello was
17 actually laying it off to Mr. Panico. I think Mr.
18 Auciello was an agent, a bookmaking agent, as well as an
19 agent in the collection for Mr. Panico. So that Mr.
20 Auciello himself didn't stand to get anything out of
21 this betting arrangement other than the sort of salary
22 arrangement or employer/employee principal agent wish
23 that happened with Mr. Panico. He did not stand to
24 profit from the betting based upon the spread. He stood
25 to profit because he worked for Mr. Panico. Mr. Panico,

Page 15

1  the ultimate supervisor at the end of the chain, but he
2  bears his responsibility, his greater culpability for
3  his role in this offense as it was charged with his role
4  directing Mr. Auciello in the extortion of Mr. Andrews.
5        THE COURT: That his direction to Mr. Auciello
6  having a joint responsibility here of collecting a debt
7  is the action of an organizer, leader, manager or
8  supervisor?
9        MR. OWYANG: I'm only pausing because of Your
10 Honor's use of the word "joint." It's true that they
11 were joint in the sense that they were both involved and
12 that they were both convicted as co-conspirators in the
13 state of a conspiracy, but is not joint in the sense
14 that they were equal operators who were bearing equal
15 responsibility for their actions in this conspiracy.
16 The fact that Mr. Auciello was placing the bets upstream
17 to Mr. Panico and his ongoing involvement in this case
18 essentially stem from Mr. Auciello's role as an agent in
19 the Government's view for Mr. Panico. Mr. Auciello
20 himself did not personally stand to profit by the same
21 degree or extent that Mr. Panico appeared to profit by
22 the collection of the debt which I think the money would
23 ultimately have gone back to Mr. Panico. I think that
24 the testimony bears that out. I believe Mr. Auciello's
25 testimony is among those lines, Your Honor.

Page 17

1  in turn, however, was, in fact -- I believe the
2  testimony was -- laying off to the other organizations.
3  So he stood to profit from the spread.
4        THE COURT: But how is he to be treated as an
5  organizer or leader or manager or supervisor -- and now
6  you're saying of -- or not now, but you're saying of Mr.
7  Auciello?
8        MR. OWYANG: Yes, Your Honor. And they --
9        THE COURT: And, so, let's put it in a
10 business context. You have a collection agency --
11        MR. OWYANG: Yes.
12        THE COURT: -- in a company. And a
13 salesperson has failed successfully to get the seller or
14 purchaser to pay in a timely fashion. And, so, you turn
15 it over to the collection agency. Does that make the
16 collection agency a supervisor or organizer or leader?
17        MR. OWYANG: I think for a supervisor in a
18 collection agency who stands to profit based upon the
19 economic analysis they did in purchasing the risk
20 against the potential or the likelihood of collecting
21 that debt, I think so. And that's borne out, I think,
22 by application note (4) in the second to the last
23 sentence where it does say there can, of course, be more
24 than one person who qualifies as a leader or organizer.
25        THE COURT: Right, there can be certainly.

Page 22

1  that suggested violence would be the earliest one, the
2  early one. We suggest that it's escalating in the sense
3  of seriousness and that's because it is no longer -- I
4  mean, it goes from the simple carrying of a weapon to
5  motor vehicle infractions to that conviction for an
6  actual substantive crime and a gambling-related offense
7  with a certain underlying offense here. And to that
8  extent, it's escalating because it does show that he
9  acts with increasing seriousness as he gets older.
10  Having said that, the calculation is admittedly on the
11  low end of a category III. I believe it's four points
12  in this case --
13       THE COURT: Right.
14       MR. OWYANG: -- which is the lowest number.
15  I don't think it should be treated at the high end of
16  II. It's treated at the low end of III because it's
17  performed in the calculation and Mr. Panico didn't
18  challenge the calculation.
19       THE COURT: But the question is whether or not
20  this over-represents his criminal activity, criminal
21  history. And what we have are operating after a license
22  is revoked in 1993 and then giving a false motor vehicle
23  document, the purpose of which apparently was to keep
24  covered up that he didn't have -- that he had his
25  license revoked.

Page 23

1       MR. OWYANG: I don't -- I mean, the reason we
2  take the position that we do is not because we think the
3  offenses are any more serious than the PSR suggests.
4  They're only what they say in the PSR. But that's the
5  same reason that they get the lowest number of points
6  that are allotted in this three-point grading system.
7  They get the one point in each event. And when it comes
8  down to it, if his adjusted offense level is -- it
9  sounds like it's going to be a 24 in this case instead
10  of 26 -- there's an overlap in category II and
11  category III as there are in --
12       THE COURT: Yes, but we're doing it step by
13  step. We're doing it by each individual dimension to
14  it. And I haven't begun to look at where this
15  generates.
16       MR. OWYANG: I didn't mean that, Your Honor.
17       THE COURT: And, so, I'm focusing on this kind
18  of criminal history category which has the feel of
19  criminal history category II. You know, knife and brass
20  knuckles as a kid is not a good thing, but --
21       MR. OWYANG: As an adult, Your Honor.
22       THE COURT: Well, a 19-year-old kid.
23       MR. OWYANG: Young adult, correct.
24       THE COURT: And illegal use of a phone for
25  gaming, sandwiched between it is two motor vehicle

Page 24

1  violations, essentially motor vehicle violations,
2  although lying to cops is not a good idea either. But
3  it appears to be related, as I said, to a concern that
4  he was going to be caught again for operating without a
5  license or after a license had been revoked.
6       MR. OWYANG: Again, I'm not disagreeing with
7  the substance of what Your Honor is saying. I had
8  disagreement with the characterization because the
9  Guidelines contemplate that there will be points
10  allotted for minor offenses.
11       THE COURT: Yes. They also contemplate that
12  in doing the arithmetic that you're going to show up
13  with an over-representation of the criminal history. And
14  that's what I'm addressing, not the arithmetic, but the
15  over-representation.
16       MR. OWYANG: And I guess -- and perhaps I'm
17  wrong about the standards here. But I don't think it's
18  an over-representation that it's of the kind and degree
19  that's not already contemplated by the Guidelines.
20       THE COURT: Okay. Mr. Pasquina, anything?
21       MR. PASQUINA: Your Honor, obviously, I would
22  solidify the fact that I feel as if it is an over-
23  representation. We have a case where a young man is 19
24  years old. He was arrested. I think there were a
25  number of youths in the street drinking beer at that

Page 25

1  particular time which promulgated the -- or was probable
2  cause for the arrest of which he was acquitted of that
3  particular charge.
4       THE COURT: He was acquitted of drinking
5  alcohol in public. He admitted to sufficient facts
6  regarding carrying a dangerous weapon, something you
7  characterize merely as continued without a finding.
8  It was not merely continued without a finding. He
9  admitted to sufficient facts.
10       MR. PASQUINA: Well, I would assume that
11  prior to that -- I just gave the results of the case.
12  Obviously, he was given a colloquy at that particular
13  time. But I'd just like to just draw attention to this
14  was more -- I mean, he's a 19-year-old kid at that
15  particular time. This is not a sophisticated weapon.
16  It was something that's purchased in carnivals. And --
17       THE COURT: Well, it does the job.
18       MR. PASQUINA: Well, I don't know whether or
19  not it would do the job, Your Honor. But it's something
20  that was done in a childlike manner probably to impress
21  friends at that particular time. And I would just
22  suggest, Your Honor, that he was 19 years old at that
23  time. He has had no arrest of violence and there is no
24  arrest for drugs. I mean, they are treating this the
25  same way as it would be a drug offense, that would be a

Page 30

1  So, the reasoning and the principles underlying our
2  recommendations either under the Guidelines or in an
3  indeterminant regime are essentially the same, Your
4  Honor.
5       THE COURT: Well, I want to be clear about
6  what the Government is contending. Are they simply
7  contending that the Guidelines may disappear, but they
8  must be imposed absent some other supervening reason?
9       MR. OWYANG: Not exactly, Your Honor.
10  Obviously in the traditional pre-Blakely guidelines, I
11  think you know what our positions are. And I can go
12  through them in this case. But in the indeterminant
13  sentencing realm, our recommendation is based largely
14  on the Government's thinking that the Sentencing
15  Commission had it right in promulgating the types of
16  considerations that the Government and the Court ought
17  to consider when sentencing a defendant --
18       THE COURT: Well, is it just a matter of
19  considering them? That is, I've considered them, but I
20  weigh them differently?
21       MR. OWYANG: It's both, Your Honor. It's both
22  that the Guidelines provide the appropriate substantive
23  factors as well as the appropriate standards and weights
24  which can be found by the Court. But it is --
25       THE COURT: So, then, the Guidelines are wiped

Page 31

1  away, but they remain?
2       MR. OWYANG: As guidelines.
3       THE COURT: Well, but you're telling me that
4  they're guidelines that are appropriate and have to be
5  followed?
6       MR. OWYANG: I'm not saying -- the last point,
7  I'm not saying, has to be followed. In an indeterminant
8  scheme, I do not --
9       THE COURT: In an indeterminant -- let's call
10  them by separate categories.
11       Number one would be the Guideline regime as it
12  now exists. Number two would be an indeterminant
13  scheme. Number three would be this modified scheme.
14       MR. OWYANG: Right.
15       THE COURT: Now, with respect to number two --
16       MR. OWYANG: Yes.
17       THE COURT: -- you're telling me that the
18  Guidelines would be presumably wiped away -- that is,
19  they are no longer directives to the Court as guidelines
20  under number one, but that they are somehow cabining my
21  discretion to make a determination.
22       MR. OWYANG: No. Under regime two, it's not
23  the Government's view that they cabin the discretion.
24  It's the Government's view that the Guidelines under
25  regime two are not binding on this Court. Rather, it's

Page 32

1  the Government's view that the Guidelines under regime
2  two are the appropriate guidelines or the appropriate
3  way of thinking about how to arrive at an appropriate
4  sentence for a particular defendant given a particular
5  offense.
6       THE COURT: Okay. Well, so I'm thinking about
7  them, what does that mean? I mean, --
8       MR. OWYANG: That you retain your traditional
9  discretion as existed presumably pre-Guidelines to
10  sentence within the indeterminant sentencing range set
11  by the statutory minimum and maximum. In this case,
12  there was no statutory minimum.
13       THE COURT: So I simply say, you know,
14  thinking about this, the Guidelines are interesting, but
15  they seem to me to be too high in this area. But I have
16  considered the nature and circumstances of the offense
17  and the history and characteristics of the defendant.
18  I'm mindful of the need to reflect the seriousness of
19  the offense for respect of the law and to provide just
20  punishment and to afford adequate deterrence to criminal
21  conduct and to protect the public from further crimes
22  of the defendant and to provide the defendant with
23  educational and vocational training and other
24  correctional treatment in the most effective manner.
25  Then, is it your view that I have done what's necessary

Page 33

1  under the indeterminant scheme?
2       MR. OWYANG: As it relates to the Guidelines.
3       THE COURT: Yes. I've considered them --
4       MR. OWYANG: I think that's right, Your Honor.
5       THE COURT: -- fully. This is not a pretext.
6  I've considered them. I just, for example, think they
7  are too high. Then I'm free under that system, having
8  made those kinds of calculations, to reach a different
9  judgment.
10       MR. OWYANG: Subject to the abuse of
11  discretion standard, I believe that's true, Your Honor.
12       THE COURT: Right. Well, what does abuse of
13  discretion mean here? Part of it in this extended
14  memorandum, there is a discussion about appeal, that the
15  Government retains its appellate rights here. Under
16  these circumstances, having considered the Guidelines in
17  the way in which I've indicated I would or could, I
18  should say, does the Government have any appellate right
19  -- appellate basis, I should say?
20       MR. OWYANG: Under regime two --
21       THE COURT: Right.
22       MR. OWYANG: -- that the abuse of discretion --
23       THE COURT: Right.
24       MR. OWYANG: -- arriving at -- well, let me
25  think here. Well, under regime two where the Government

Page 38
1  because of cooperation. He was given it because of his
2  role in the offense. And the role in the offense, Your
3  Honor, has not been ascertained as to who was the
4  leader, who was the follower, who received --
5           THE COURT: Well, as I understand it, Judge
6  O'Toole decided that Mr. Auciello was subordinate to Mr.
7  Panico.
8           MR. PASQUINA: Well, that was on a plea, Your
9  Honor. That wasn't --
10          THE COURT: Well, but that demonstrates,
11 doesn't it, the lack of equivalence in the disposition
12 of both cases?
13          MR. PASQUINA: I really don't believe it does,
14 Your Honor, because only one side of the story wasn't
15 probed at that particular time, if I understand the
16 question correctly. And I think that the disparity
17 of --
18          THE COURT: But that's the whole point, that
19 different Judges may on different records make different
20 determinations.
21          MR. PASQUINA: I understand that. But, Your
22 Honor, the whole and sole reason of the Guidelines -- I
23 mean, the inception of the Guidelines -- was to see that
24 there is some uniformity in sentencing. We have similar
25 criminal defendants. We have similar criminal offenses,

Page 39
1  Your Honor. So, therefore, the sentence should be
2  somewhere within a -- within a time frame that can be
3  digested, Your Honor. But to give one person on the
4  same sentence a year and a day -- I mean, excuse me --
5  for the same crimes a year and a day and the other 68
6  months is just -- it's mind boggling, Your Honor. I
7  would suggest that if His Honor would give this young
8  man a downward departure, I think the offense level
9  should go to I, but that's fine. I'll settle on offense
10 level -- category history level II. Excuse me. I mean,
11 if he were to be given a downward departure to a 12 --
12 to 12 to 18 months, Your Honor, I think it would well
13 serve the purpose of the Court. I think His Honor knows
14 his history. He's a young man. There is -- other than
15 the exception of having this apparatus which was
16 classified as brass knuckles, there are no complaints of
17 violence on his record. He did -- under a colloquy --
18 certainly take an admission to certain facts on that.
19 But he's a young man who is very, very close to his
20 family. He's been a productive citizen. I think he
21 will continue to be a productive citizen. This has been
22 tremendous ramifications not only upon him, obviously,
23 because he's incarcerated, but upon his family. His
24 mother is extremely ill at this particular time. His
25 father is old -- older, I should say. He's always lived

Page 40
1  in his parents' house. He's been a tremendous help to
2  them. I think this -- I think there's a wake-up call.
3  Obviously, there has been a history of gambling within
4  him. I think the presentence report points that out as
5  well as Mr. Panico's former conviction of gambling. I
6  think it's been something that's been almost part of his
7  life since he's been a young man, but that doesn't
8  involve -- it has never involved violence, Your Honor.
9  There has never been any inclination of abuse or sale by
10 illegal substance. Even though Mr. Auciello said he did
11 that a daily basis, it wasn't -- Mr. Panico was never
12 involved in that. And I think there has been a wake-up
13 call for Mr. Panico. I think this is mere -- I don't
14 think it is, Your Honor. But in the street vernacular
15 and in the word and phrases that we captured, I think
16 the language is his language, but it's harsh language in
17 that isolated -- not isolated, but that neighborhood,
18 that ethnic background, which is my ethnic background.
19 And I think that's just the way people talk. And I
20 think the -- I think the ramifications of a phone call
21 over a phone which is colorful language, it is not --
22 the exact meaning is not properly articulated. And the
23 ramifications if someone didn't pay, certainly nothing
24 never happened to this young man and I think it was just
25 boastful bravado on the fact of Mr. Panico and I'd

Page 41
1  respectfully ask that he be given a downward departure
2  somewhere in the area of 24 months to be served.
3           THE COURT: All right.
4           MR. PASQUINA: Thank you, Your Honor.
5           THE COURT: Thank you.
6           Mr. Panico, I'll hear from you if there's
7  something that you want to say at this point.
8           MR. PANICO: Yes, Your Honor. I thank God for
9  giving me such a -- I'm sorry. I want to apologize to
10 you first for taking up time in the court. And I just
11 want to -- may I have some water?
12          THE COURT: Yes.
13          MR. PANICO: I want to apologize to Your Honor
14 for taking up time in the court. I want to thank God
15 for giving me such a lovable and caring and supportive
16 family any human being can have.
17          THE COURT: All right. Thank you.
18          Well, as the discussion has indicated, there
19 is considerable uncertainty about precisely how
20 sentences are to be imposed in the wake of Blakely v.
21 Washington, a Supreme Court case that was handed down
22 earlier this summer. A number of courts have expressed
23 themselves concerning whether or not Blakely means
24 that the Sentencing Guidelines in the federal system are
25 unconstitutional or invalid. I'm not sure that anything

Case 1:03-cr-10258-DPW   Document 104   Filed 03/23/06   Page 16 of 21

Page 46

1  defendant submit to one drug test within 15 days of his
2  release from imprisonment and at least two periodic drug
3  tests thereafter not to exceed 104 drug tests per year
4  as directed by the Probation Office because there is
5  some uncertainty about the defendant's prior drug use
6  and there is always a danger that someone released from
7  prison will find the use of drugs to be something that
8  he wants to do. And, so, to permit the Probation Office
9  to assist the defendant in controlling his life, I will
10 permit that kind of drug testing. The defendant is
11 prohibited from possessing a firearm or other dangerous
12 weapon. He is obligated to pay the mandatory
13 assessment, which is $200, which is due and payable
14 forthwith. But if it hasn't been paid, then the
15 defendant must pay the balance of that special
16 assessment according to a court ordered repayment
17 schedule if that's necessary. And to the degree that
18 it has not been paid, the defendant is prohibited from
19 incurring any new credit charges or opening additional
20 lines of credit without the approval of the Probation
21 Office. And he must provide the Probation Officer with
22 access to such requested financial information that
23 probation seeks. And that information, he should
24 understand, may be shared with the Financial Litigation
25 Unit of the United States Attorney's Office. The

Page 48

1  determination that a firearm was brandished here. I
2  have also credited Mr. Pasquina's characterization of
3  this activity as involving some degree of bravado,
4  showing off. I think it's fueled by some problems of
5  anger management that you have. I also think it is
6  fueled by associations with the wrong kind of people who
7  ultimately have gotten you in trouble. You're the one
8  going to prison under these circumstances. I hope, as
9  Mr. Pasquina said, that this will be a wake-up call for
10 you because now the kinds of sentences that get imposed
11 with the kind of criminal history that you have don't
12 get lighter. They get heavier. That the state system
13 thought that it was appropriate to avoid incarceration
14 for your previous offenses is a judgment that the state
15 has made. I'm not sure it made it in a fashion that was
16 helpful to you because you did not get a clear wake-up
17 call before this offense. If you know what's good for
18 you, you'll take advantage of the programs in the Bureau
19 of Prisons. Even under the alternative that I've
20 indicated, it's a significant sentence, but it's
21 significantly long enough to permit you to participate
22 fully in those programs. And you'll reflect on how you
23 got there. And how you got there was your inability to
24 control yourself. And you'll come back there if, after
25 you emerge from prison, you find yourself associating

Page 47

1  defendant is obligated to participate in a program for
2  substance abuse treatment as may be directed by the
3  United States Probation Office in connection with the
4  testing if the Probation Office perceives a need for
5  that. And they'll bring that to my attention if they
6  do. The defendant is also obligated to participate in
7  an anger management program. And that is a request that
8  I will make or a recommendation that I will make as well
9  to the Bureau of Prisons. And the defendant shall be
10 required to contribute to the cost of those services to
11 the degree that he has an ability to pay or there's some
12 availability of third-party payment. With respect to
13 the question of recommendations, I will make a
14 recommendation, in light of the defendant's close
15 relationship with his family, which I credit, that the
16 defendant be incarcerated in the facility -- appropriate
17 facility -- closest to his residence in Massachusetts
18 and that, while he is in the Bureau of Prisons, the
19 defendant participate in an anger management program
20 there.
21        Mr. Panico, as I've indicated, I've made a --
22 you may remain seated.
23        I've made a determination of my own that you
24 were involved in this activity as charged. And I have
25 by a somewhat lower standard than the jury made a

Page 49

1  with the same people, getting yourself involved in the
2  same kind of activity. And at that point, there won't
3  be, I think, the kinds of reductions for role in the
4  offense or overstatement of criminal history that I felt
5  are appropriate now. Ultimately, it's up to you. You
6  take advantage of the programs in the Bureau of Prisons
7  and you take advantage of the kinds of supervision and
8  assistance that the Probation office can provide you and
9  you avoid getting involved with others.
10        MR. PANICO: May I say something?
11        THE COURT: I think that you ought to talk to
12 Mr. Pasquina before you say something to me.
13        MR. PANICO: I'm sorry. [Pause]
14        THE COURT: Anything further?
15        MR. OWYANG: Quickly, Your Honor, I take it
16 that your sentence regarding the fine and supervised
17 release would be the same using the three alternatives?
18        THE COURT: Yes. That's absolutely the case.
19        MR. OWYANG: And just to supplement my further
20 response, I think the Government's position on appeal,
21 although I do think it's not clear to the Government,
22 is somewhere between what Your Honor said, that the
23 pre-Guidelines case essentially being no right of appeal
24 and the possibility that an appeal right may lie under
25 18 USC 3742(b)(4) where there's no Guideline.

**A**
ability 36:17 47:11
able 36:24
absent 30:8
absolutely 49:18
abuse 33:10,12,22
   34:24 40:9 47:2
access 46:22
acquitted 25:2,4
acting 14:3,7
action 15:7
actions 15:15
activity 21:22,22,23
   22:20 26:23 42:19,20
   43:10,10,20 47:24
   48:3 49:2
acts 22:9
actual 22:6
add 19:8 42:1
addenda 2:25
addition 21:3 45:22
additional 20:24 46:19
address 29:17 44:24
addressing 24:14
adequate 32:20 44:8
adjusted 23:8
adjustment 7:1 16:3
admission 21:13 39:18
admitted 6:15 7:2 25:5
   25:9
admittedly 22:10
adopt 43:11
adopted 10:23
adult 23:21,23
advantage 48:18 49:6,7
advisability 50:14
affect 6:9
afford 32:20 36:24 37:9
   44:8
agency 17:10,15,16,18
agent 15:18 16:18,18
   16:19,22 26:11,11
agents 26:9
aggregation 26:20
agree 8:5
alcohol 25:5
allegedly 12:23
allotted 23:6 24:10
alternative 5:8,17,24
   6:4 28:5,15 29:6,11
   35:9 44:23 48:19
alternatively 44:2
alternatives 42:14
   49:17
ambassador 14:7
amount 44:11 45:11
analysis 17:19
analytical 29:24

Andrews 9:6,15,19,21
   10:3,10 12:10,17,23
   13:17,18,22 14:10
   15:4 18:22 19:18
   20:4,8
anger 47:7,19 48:5
announce 42:15
answer 35:13,15
anytime 28:11
apart 27:4
apologize 4:20 41:9,13
apparatus 39:15
apparently 22:23
appeal 33:14 34:9,11
   34:13,16 35:3,12
   49:20,23,24 50:13,15
**APPEARANCES** 1:13
appeared 15:21
appears 24:3
appellate 33:15,18,19
   34:7,8 35:9
application 17:22
applies 6:5,6,10 37:6
apply 6:13 28:20,23
   42:10 44:2
appropriate 27:14
   29:24 30:22,23 31:4
   32:2,2,3 36:5 37:2,8
   43:3 44:22 47:16
   48:13 49:5
approval 46:20
April 9:15,22,23
area 32:15 41:2 44:1
arguing 2:23
argument 11:7 12:8
   21:1 37:14
arithmetic 24:12,14
   43:5
arithmetically 26:21
arranged 14:2
arrangement 16:21,22
arrangements 14:6
arrest 4:3,8 25:2,23,24
arrested 24:24
arrive 32:3
arriving 29:25 33:24
art 16:16
articulated 40:22
ascertained 38:3
asked 2:10 8:18 10:3
   28:1 42:14
asking 5:15 7:9 8:8
assessment 37:10 46:13
   46:16
assign 20:24
assist 12:5 46:9
assistance 3:16 45:20
   49:8

**Assistant** 1:14
associating 48:25
associations 48:6
assume 3:1 25:10
assuming 6:12 28:19
   29:13
assumption 44:1
attempts 14:1
attention 12:14 25:13
   47:5
**Attorneys** 1:14
**Attorney's** 1:15 46:25
Auciello 8:17 9:9,22,25
   10:4,14,18,24 11:12
   11:12 12:10,24,24
   13:10,11,14,17,19,20
   13:21,22,25 14:3,3,25
   15:4,5,16,19 16:11,13
   16:16,18,20 17:7 18:6
   18:15,18 19:17,20,20
   20:3,7,7,8,20,21
   37:17,18,19,25 38:6
   40:10
**Auciello's** 15:18,24
   19:3
**August** 1:12 2:2 4:6,7
availability 47:12
avoid 48:13 49:9

**B**
back 15:23 21:23 48:24
background 16:1 40:18
   40:18
bad 19:22
balance 46:15
based 13:20 16:24
   17:18 30:13 34:25
   37:15
bases 34:25
basically 6:20 13:23
   18:22
basis 27:1 33:19 34:20
   35:1 40:11 43:17
bearing 15:14
bears 15:2,24
beer 24:25
Beg 8:14
begun 23:14
behalf 1:15,17
believe 5:2 15:24 17:1
   18:7,7,20 22:11 33:11
   36:12 37:8 38:13
   42:5,21 43:1
believing 36:4
beneficial 3:16
best 2:22
bet 13:20,24 14:1,18
   16:11 26:3,6,10

bets 14:20 15:16
betting 16:21,24
bettor 18:22
beyond 6:14 7:3,16
binding 31:25 34:2
**Blakely** 2:12,15 4:16
   5:9,20,25 6:5,7,12,15
   6:24 19:14 27:5
   28:10,13,20,23 41:20
   41:23 44:16,19,24
**Blakely's** 6:9
blaming 19:23
boastful 40:25
boggling 39:6
bookmaker 13:23
   18:23
bookmaking 16:18
   37:1
borne 17:21
**Boston** 1:15,20,24
brandished 8:9 9:14
   12:20 48:1
brandishing 7:25 8:1,3
brass 21:15 23:19
   39:16
bravado 40:25 42:22
   43:7,7,7 48:3
brief 4:20 50:9
bring 10:11 12:14 19:1
   47:5
bringing 10:14
brother 9:21
brought 18:22
Bureau 44:13 47:9,18
   48:18 49:6
business 17:10
bypasses 2:24

**C**
C 51:2,2
cabin 31:23
cabining 31:20
calculated 42:6 44:19
calculation 6:19 22:10
   22:17,18 26:25 27:22
   29:14
calculations 2:5 27:16
   33:8
call 4:15 31:9 40:2,13
   40:20 43:4 48:9,17
called 14:22 20:25
calling 26:12,13
calls 18:10 43:20
candid 35:15
capable 45:11
captured 40:15
caring 41:15
carnivals 25:16

carrying 21:14 22:4
   25:6
case 2:12 3:24 4:18,25
   5:17 6:17,21,24 7:16
   8:16 13:2 14:13
   15:17 21:4 22:12
   23:9 24:23 25:11
   28:2 29:4 30:12
   32:11 34:5,14,15 37:1
   37:1,2 41:21 49:18,23
cases 4:22 5:11,16
   10:19 38:12 43:18
cash 45:16
categories 31:10
category 20:17 21:18
   22:11 23:10,11,18,19
   26:19 27:2,18 29:14
   35:25 36:5,9,11 39:10
caught 24:4
cause 25:2
certain 9:3 22:7 39:18
   45:11
certainly 8:22 17:25
   19:12,13 39:18 40:23
   43:10
certify 51:5
chain 15:1 16:14
challenge 22:18
challenges 45:14
characteristic 7:14
characteristics 32:17
   42:20 43:14 44:4
characterization 24:8
   26:6 48:2
characterize 25:7
   26:18
characterized 26:5
characterizes 21:12
charge 25:3
charged 15:3 37:18
   47:24
charges 37:19 46:19
childlike 25:20
choosing 27:12
Circuit 3:21
circumstance 3:22
circumstances 4:17
   13:15 20:17,24 29:1
   32:16 33:16 34:11
   42:16 43:19 45:4,9
   48:8
citizen 39:20,21
classified 39:16
clear 3:21,23 5:15,23
   11:6,8 13:9 14:9 19:3
   20:19 30:5 42:12
   48:16 49:21
client 3:2 12:5

**exact** 40:22
**exactly** 30:9 35:8 37:18
**example** 6:8 33:6
**exceed** 46:3
**exception** 39:15
**excuse** 39:4,10
**exercise** 16:5 34:4
**exercised** 50:16
**exerted** 19:5
**existed** 32:9
**existing** 2:13
**exists** 31:12
**experience** 43:17
**exposed** 18:19,21
**expressed** 41:22
**extended** 33:13
**extension** 2:10
**extent** 14:18 15:21 22:8
**extortion** 15:4
**extortionate** 14:16
  43:16
**extremely** 39:24

**F**
F 1:17 51:2
**face** 6:10 45:14
**facility** 47:16,17
**fact** 12:8 15:16 17:1
  18:24 19:16 20:4
  24:22 40:25
**factors** 7:2 30:23 42:24
  43:24
**facts** 19:11 21:13,25
  25:5,9 39:18
**failed** 17:13
**failure** 3:17
**fair** 8:8 21:5
**fairly** 14:22 26:5,22
**fake** 9:21
**false** 22:22
**family** 39:20,23 41:16
  47:15
**fashion** 2:7 17:14 27:11
  28:15 48:15
**father** 39:25
**FBI** 10:16,19
**federal** 6:9 41:24 45:23
**feel** 23:18 24:22
**fell** 20:17
**felt** 18:21 49:4
**file** 4:22
**financial** 37:4 45:8
  46:22,24
**find** 5:6 6:24 8:8,13,15
  12:15 46:7 48:25
**finding** 13:2 21:13 25:7
  25:8 36:17,19
**finds** 6:5 37:8

**fine** 19:22 36:4,11,12
  36:19,24 37:2,5,7,8
  39:9 45:7 49:16
**firearm** 7:1,21 8:9,20
  12:18 13:3 46:11
  48:1
**first** 3:21 6:18 7:12
  29:7 41:10
**five** 11:25
**Floor** 1:19
**flows** 42:9
**focused** 4:24 9:12
**focusing** 23:17
**followed** 31:5,7
**follower** 38:4
**footnote** 5:6,6
**foregoing** 51:6
**form** 5:9,21 6:5
**former** 40:5
**forth** 3:7 6:19 43:24
**forthwith** 46:14
**found** 7:15 30:24 34:1
  44:16
**four** 3:12 8:23 22:11
  29:4
**four-level** 7:13
**four-point** 28:17
**frame** 39:2
**framework** 29:24
**fraternity** 35:20
**free** 33:7 34:4 36:18
**friends** 25:21
**frolic** 19:21
**fruits** 19:16
**fueled** 48:4,6
**fully** 33:5 48:22
**functioning** 20:21
**further** 12:6,8 32:21
  44:10 45:15 49:14,19
  50:17
**furtherance** 7:24
**future** 50:7

**G**
**gambling** 40:3,5
**gambling-related** 22:6
**gaming** 21:17 23:25
  26:9,11
**gather** 21:15
**gender** 34:20,21
**general** 7:24 26:17
**generally** 29:22
**generates** 23:15
**gesture** 10:2
**getting** 49:1,9
**give** 8:23 19:18 39:3,7
**given** 19:17 20:3 25:12
  29:4 32:4 37:2,20,24

37:25 38:1 39:11
  41:1
**giving** 18:12 22:22 41:9
  41:15
**Gloucester** 1:17
**go** 3:15 7:8 18:14 30:11
  39:9
**God** 41:8,14
**goes** 11:17 22:4
**going** 3:15,20 18:13,14
  18:14 20:13 23:9
  24:4,12 28:23 34:10
  45:14,16 48:8
**good** 19:21 23:20 24:2
  48:17
**gotten** 48:7
**Government** 4:14 5:7
  5:10 7:4,9 8:7 19:10
  27:25 29:16 30:6,16
  33:15,18,25 34:3
  35:12 36:1 42:14
  49:21
**Government's** 8:1 10:1
  14:12,24 15:19 21:1
  28:15 29:2,7,21,23
  30:14 31:23,24 32:1
  35:8 49:20
**go-between** 18:24
**grading** 23:6
**greater** 15:2 16:8
**grounds** 27:9 35:4,4
**guess** 4:15 7:7 24:16
**guideline** 6:19,22 27:20
  28:11,12 29:11 31:11
  42:6,8,13 43:20 45:3
  49:25
**guidelines** 2:16 5:25
  6:1,2,6,6,8,9,11,13,22
  9:13 12:19 19:14
  24:9,19 27:15,16
  29:18,23 30:2,7,10,22
  30:25 31:2,4,18,19,24
  32:1,2,14 33:2,16
  38:22,23 41:24 42:5
  42:10,25 43:4 44:2,17
  44:19,20,25 50:5
**guideliness** 34:2
**Guideline-free** 6:1
**gun** 9:7,13,16,19,20,21
  10:3,4,7,8 11:11,14
  11:15 12:3,25
**guy** 11:13,15 19:21,22

**H**
**hand** 45:12
**handed** 41:21
**happen** 28:24
**happened** 16:23 40:24

**happening** 11:11
**harsh** 40:16
**head** 4:11 9:16,20
  11:14,15
**hear** 21:10 29:15 41:6
**HEARING** 1:11
**heartland** 43:21
**heavier** 48:12
**help** 40:1
**helpful** 48:16
**he'll** 36:24
**high** 22:15 32:15 33:7
**higher** 42:4 45:5
**history** 3:9 21:9,11,18
  22:21 23:18,19 24:13
  26:18,19 27:1,18
  32:17 36:5 39:10,14
  40:3 43:13 44:4
  48:11 49:4
**hit** 10:3,4
**home** 3:22
**honor** 2:9,18 3:4,8,13
  4:1,19,21 5:2,19 8:6
  8:11,21 9:2 10:10
  11:25 12:7,13,21
  13:10 14:14 15:25
  17:8 18:25 19:9,24
  20:1,6 21:25 23:16,21
  24:7,21 25:19,22 26:1
  26:14 27:6,23 28:4,21
  30:4,9,21 33:4,11
  34:18 35:14 36:7,18
  36:22 37:13,23 38:3,9
  38:14,22 39:1,3,6,7
  39:12,13 40:8,14 41:4
  41:8,13 49:15,22 50:7
**HONORABLE** 1:9
**Honor's** 15:10
**hope** 45:9 48:8
**house** 4:3,8 37:22 40:1
**human** 41:16 42:1
**hurting** 9:22

**I**
**idea** 24:2
**identified** 13:22
**II** 21:19 22:16 23:10,19
  26:19 27:2,19 29:14
  36:11 39:10
**III** 21:18 22:11,16
  23:11 26:20,21 36:5,9
**ill** 39:24
**illegal** 23:24 40:10
**immediately** 10:15
**implications** 35:17
**impose** 5:8 42:5,12,13
  44:17 45:4,7,17
**imposed** 29:1 30:8 35:3

35:4 41:20 42:19
  44:14 48:10
**imposing** 34:4 42:22
**impress** 25:20
**imprisonment** 46:2
**improper** 35:4
**inability** 48:23
**incarcerated** 4:4,6
  39:23 47:16
**incarceration** 36:3,6,8
  48:13
**inception** 38:23
**inclination** 40:9
**included** 16:3
**including** 4:17 8:16
**income** 45:10
**incorporated** 4:2 8:3
**incorrect** 5:19
**increasing** 22:9 45:2
**incriminating** 10:21
**incurring** 46:19
**indeterminant** 29:19
  29:22,25 30:3,12 31:7
  31:9,12 32:10 33:1
  42:17 43:23 44:21
  45:6
**indicated** 14:1 18:18
  19:10 33:17 41:18
  43:5 45:3 47:21
  48:20
**indication** 36:20 45:12
**individual** 23:13
**information** 5:18 45:8
  45:10 46:22,23
**infractions** 22:5
**inquiry** 8:17
**insistence** 19:3
**insofar** 10:12 37:24
**instance** 20:11
**interactions** 14:8
**interest** 18:17
**interesting** 32:14
**interpret** 6:8
**interprets** 6:7
**invalid** 41:25
**involve** 40:8
**involved** 4:25 8:17 10:8
  14:18 15:11 40:8,12
  43:7 44:12 47:24
  49:1,9
**involvement** 15:17
**involving** 48:3
**irrelevant** 9:11
**irrespective** 2:14
**isolated** 40:17,17
**issue** 3:11 5:1 9:14 27:5
  27:7 50:2
**issues** 4:25 27:4 50:3,6

40:13,25 41:6,8,13
47:21 49:10,13 50:12
**Panico's** 14:7,13 40:5
**paragraph** 21:2
**pardon** 8:14
**parents** 40:1
**parity** 27:7
**part** 33:13 35:16 37:17
40:6 44:25,25 45:1
**participate** 47:1,6,19
48:21
**particular** 11:23 12:10
12:13,25 20:2,10 25:1
25:3,12,15,21 26:15
32:4,4 37:3 38:15
39:24 42:20
**particularly** 21:22
**particulars** 43:2
**Pasquina** 1:17 2:6,9,18
2:22 3:4,8,12 4:1,11
8:12,14,21 9:2 10:9
11:2,9,21 12:7,21
19:7,9 24:20,21 25:10
25:18 26:12 27:5,6
37:12,13 38:8,13,21
41:4 48:9 49:12
50:14
**Pasquina's** 43:6,12
48:2
**Pause** 49:13
**pausing** 15:9
**pay** 17:14 18:14 19:1
36:15,17 40:23 45:16
45:16 46:12,15 47:11
**payable** 46:13
**payment** 36:25 47:12
**people** 6:12 11:24 12:9
12:22 26:14 35:16
40:19 48:6 49:1
**perceived** 28:25
**perceives** 47:4
**performed** 22:17
**period** 4:5 45:17,21
**periodic** 46:2
**permit** 46:8,10 48:21
**persistent** 19:4
**person** 10:22,25 17:24
18:21 19:1 39:3
**personally** 14:10 15:20
**persons** 16:5
**phone** 20:3 23:24 26:3
26:6 40:20,21
**phrases** 40:15
**physical** 10:2
**place** 12:25 26:18
**placed** 13:20
**placing** 13:24 14:20
15:16

**plainly** 4:17
**Plaintiff** 1:4
**plan** 36:25
**planning** 19:15
**played** 6:17
**playing** 19:21
**plea** 38:8
**please** 11:5
**point** 12:2 23:7 29:3
31:6 38:18 41:7 49:2
**points** 2:15 3:12 8:23
21:3 22:11 23:5 24:9
29:5 40:4
**portion** 19:19
**position** 4:22 5:22 23:2
29:21 49:20
**positions** 29:8 30:11
**possessing** 46:11
**possibility** 49:24
**possible** 4:16
**post-Blakely** 5:11
**potential** 17:20
**precisely** 20:21 41:19
**preponderance** 8:8
21:5
**present** 16:7 18:12
19:14
**presented** 2:19 21:4
**presentence** 3:2 21:1
26:7 40:4
**press** 50:7
**pressed** 50:2
**pressure** 19:5
**presumably** 31:18 32:9
**pretext** 33:5
**previous** 48:14
**pre-Blakely** 30:10
**pre-Guidelines** 32:9
34:13,15 49:23
**primarily** 13:18 16:3
**principal** 16:22
**principle** 6:23 8:6
**principles** 30:1
**prior** 25:11 26:23 46:5
**prison** 27:20 29:12
42:23 44:11 45:14,16
45:21 46:7 48:8,25
**Prisons** 44:13 47:9,18
48:19 49:6
**private** 36:1
**probable** 25:1
**probably** 5:23 25:20
36:6 50:1,3
**probation** 2:7,20,25
3:16 45:19 46:4,8,20
46:21,23 47:3,4 49:8
**probed** 38:15
**problem** 28:13

**problems** 48:4
**proceedings** 51:7
**process** 2:25
**productive** 39:20,21
**profit** 15:20,21 16:7,24
16:25 17:3,18
**program** 47:1,7,19
**programs** 48:18,22
49:6
**prohibited** 46:11,18
**promote** 44:6
**promptly** 50:16
**promulgated** 25:1
**promulgating** 30:15
**pronounce** 42:15
**proper** 26:17
**properly** 40:22
**protect** 32:21 44:9
**proven** 6:14 7:3
**provide** 29:24 30:22
32:19,22 44:7 45:19
46:21 49:8
**provides** 16:2 44:11,13
**prudent** 42:15
**PSR** 6:19 13:9 23:3,4
**public** 16:8 25:5 32:21
44:10
**pulled** 9:16
**punishment** 32:20 44:7
**purchased** 25:16
**purchaser** 17:14
**purchasing** 17:19
**purported** 27:10
**purpose** 22:23 39:13
**purposes** 9:12 27:14
**pushing** 21:17
**put** 11:14,15 17:9 35:23
**puzzling** 5:6
**P.M** 1:21,21 50:19

**Q**

**qualifies** 17:24
**quarrel** 3:9
**question** 2:6 9:12 12:13
13:4 14:21 18:1
22:19 29:17 34:7,9,10
38:16 42:2,3 47:13
**questions** 11:13
**quibble** 8:5
**Quickly** 49:15

**R**

**R** 1:22 51:2,4
**race** 34:21
**raise** 2:15 27:6,7 50:10
**raised** 2:16 3:13 27:4
**ramifications** 2:11 4:16
39:22 40:20,23

**range** 27:20 32:10 36:3
36:4,9 37:5 42:8,11
42:13 43:15
**reach** 33:8 42:14
**read** 3:14 28:10,14
44:20,24
**reading** 10:1
**realize** 37:16
**really** 7:22 14:12 20:18
34:10 38:13 43:12
**realm** 30:13
**reason** 2:10 23:1,5 30:8
38:22
**reasonable** 6:14 7:3,16
**reasoning** 30:1
**receive** 42:4
**received** 37:21 38:4
**recess** 50:18
**RECESSED** 50:19
**recidivate** 16:9
**recognition** 3:23
**recognize** 43:22 44:5
**recognized** 37:15
**recommendation** 7:12
29:7,16,25 30:13 36:2
36:6 37:7 47:8,14
**recommendations** 30:2
47:13
**recommended** 2:5
**record** 35:24 39:17
43:8
**recorded** 10:18,20,20
**records** 38:19
**reductions** 49:3
**referenced** 9:25
**reflect** 32:18 48:22
**refrain** 45:24
**regarding** 25:6 49:16
**regime** 28:12 29:20,22
29:25 30:3 31:11,22
31:25 32:1 33:20,25
34:1 35:9 42:18
43:23 44:21 45:6
**regular** 11:16
**related** 24:3
**relates** 33:2
**relationship** 19:1 47:15
**relative** 16:4 20:20
**release** 36:24 37:9
45:18,22 46:2 49:17
**released** 46:6
**relevant** 5:5,16
**remain** 29:8 31:1 47:22
**remains** 35:11
**renew** 37:14
**repayment** 46:16
**report** 3:3 21:1 26:7
40:4

**Reporter** 1:22 51:4
**reporting** 1:25 9:21
**represent** 26:22
**representation** 24:23
**represented** 21:10
26:13
**represents** 36:8
**request** 5:24 6:4,18
20:11 21:8 47:7
**requested** 14:6 46:22
**requests** 5:7
**require** 45:25
**required** 47:10
**requirements** 7:20
**reserve** 50:10
**residence** 47:17
**resolved** 42:3
**respect** 4:1 5:1 10:10
16:2 31:15 32:19
44:6 45:8 47:12
**respectfully** 20:11
37:23 41:1
**responding** 20:23
**response** 49:20
**responsibilities** 13:6
20:20
**responsibility** 15:2,6
15:15 16:4
**responsible** 19:2
**results** 25:11
**retain** 32:8
**retains** 33:15
**return** 44:20
**reveal** 19:11,12
**review** 2:13
**reviewed** 3:2
**revoked** 22:22,25 24:5
**right** 4:5 5:3 12:4 13:16
17:25 18:4,6 19:7
20:13 22:13 26:16
28:6,19 29:6,7,12,13
29:15 30:15 31:14
33:4,12,18,21,23 34:9
34:23,23 35:6,11,22
37:12 41:3,17 49:23
49:24 50:11,13,15
**rights** 33:15 34:7,8
35:9
**risk** 17:19
**role** 7:1 13:4,7 15:3,3
15:18 16:6 20:9 36:1
38:2,2 49:3

**S**

**S** 51:5
**salary** 16:21
**sale** 40:9
**salesperson** 17:13

understanding 5:4
  18:25 43:15
understands 4:21 5:10
Unfortunately 5:2
uniformity 38:24
Unit 46:25
United 1:1,4,10,14,14
  1:16 46:25 47:3
unknown 10:22,25
unlawful 45:24
unrelated 4:18
upstream 15:16
USC 49:25
use 7:13 15:10 23:24
  26:3 28:1 45:24 46:5
  46:7
USSG 5:9,21

**V**

v 41:20
valid 35:2
various 42:18
vehicle 10:5 21:16 22:5
  22:22 23:25 24:1
  26:2
vernacular 40:14
VERSUS 1:5
video 10:16
view 7:17 12:1 14:24
  15:19 26:17 29:3,23
  31:23,24 32:1,25 35:8
  42:3,11 43:6,18,23
  44:7
violation 21:17
violations 21:16 24:1,1
  26:2
violence 7:24 21:23
  22:1 25:23 39:17
  40:8
violent 21:22 26:1
vocational 32:23 44:12

**W**

W 1:14
wake 41:20
wake-up 40:2,12 48:9
  48:16
want 2:6 9:17,17 14:9
  19:8 21:10 28:23
  29:9,16 30:5 41:7,9
  41:11,13,14
wanted 2:11
wants 12:5 27:25 46:8
Washington 6:10 41:21
wasn't 2:6 8:19,20,20
  10:6,6,7 11:19 18:15
  38:9,14 40:11
water 41:11

way 1:15,20,23 6:9
  21:20 25:25 28:14
  29:3 32:3 33:17
  40:19 42:10
ways 43:15
weapon 7:13 12:20
  21:14 22:4 25:6,15
  28:2 46:12
weigh 30:20
weights 30:23
went 13:21
weren't 6:14 26:10
we'll 7:7 50:17
we're 3:15 6:4,15 23:12
  23:13 26:1 27:18
  28:3 34:1 37:6,16
  43:12
we've 28:13
wiped 30:25 31:18
wish 16:22
WOODLOCK 1:9
word 15:10 40:15
work 50:4
worked 16:25
world 6:1
write 42:1
wrong 9:24 24:17
  27:17 48:6

**Y**

yeah 11:16,16
year 37:21 39:4,5 46:3
years 24:24 25:22 37:9
  45:18 50:4
young 23:23 24:23 39:7
  39:14,19 40:7,24
youths 24:25

**Z**

Zampati 26:9
Zapati 3:24
zero 34:5

**$**

$10,000 36:13 37:5
$100 37:10
$200 37:10 46:13

**0**

01930 1:17
02210 1:15,20,24

**1**

1 1:15,19,20,23 5:6
104 46:3
12 39:11,12
12th 9:15
15 46:1

16th 9:19
18 39:12 49:25
19 24:23 25:22
19-year-old 23:22
  25:14
1990 21:14,23
1993 22:22
1994 26:1
1995 26:2

**2**

2E2.1B(1)(b) 12:19
20th 4:7
20-year 35:5
2000 9:15
2004 1:12 2:2
23 37:6
24 23:9 27:19 36:9,13
  41:2
26 23:10

**3**

3B1.1 16:2 20:25
3rd 1:19 9:22
3:00 1:21
3200 1:23
30-year 35:4
3200 1:23
3553(a) 43:25
36 42:23 44:8,22 45:5
37 29:12 45:3
37-month 45:5
3742(b)(4) 49:25
39 21:3

**4**

4 17:22
4:25 1:21 50:19
46 29:12 45:3

**5**

5 1:12 2:2
57 27:20 42:8,12
57-month 44:18

**6**

68 36:7,11 39:5

**7**

7th 4:6
71 27:20 42:9
75 1:17

**9**

9th 9:23
9200 1:15
924(c) 7:19,19